IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ACCESS WORLD (USA) LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>BEEMAC, INC.,<br><br>        Defendant. | Case No.: 24-cv-00643<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Access World (USA) LLC (hereinafter "Access World" and/or "Plaintiff"), by and through its undersigned attorneys, by way of Complaint against Beemac, Inc. (hereinafter "Beemac" and/or "Defendant") for damages, alleges as follows:

**PARTIES**

1. Plaintiff, Access World, a Louisiana limited liability company, is a licensed transportation broker.

2. Upon information and belief, Defendant, Beemac, is a domestic business corporation with a registered office at 2747 Legionville Road, Ambridge, PA 15003.

3. Beemac is engaged in the business of transporting cargo by motor carriage in interstate commerce.

**JURISDICTION AND VENUE**

4. This action arises from an interstate motor transportation of goods and is governed by Federal common law and Federal statutes, including the Carmack Amendment to the Interstate Commerce Act of 1887 (49 U.S.C. § 14706).

1

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337.

6. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so related to the federal claims under 49 U.S.C. § 14706 that they form part of the same case or controversy under Article III of the United States Constitution.

8. This Court has *in personam* jurisdiction over the Defendant who is a Pennsylvania domestic business corporation and who transacts regular and systematic business within the Commonwealth of Pennsylvania.

9. Venue is proper in this District because the Defendant operates within this District.

## GENERAL ALLEGATIONS

10. This action arises from an interstate motor transportation of goods.

11. More specifically, this matter arises out of losses to certain cargo said to consist of copper wire rods ("Subject Cargo").

12. On or about September 10, 2019, Access World and Beemac entered into a Motor Carrier-Broker Agreement ("the Agreement") wherein Access World agreed to arrange for the ground transportation of shipments to be transported by Beemac.

13. Thereafter, Access World hired Beemac to transport eleven loads of Trafigura Trading LLC ("Trafigura") copper (the Subject Cargo) from the Port Cargo Service

warehouse in Elmwood, Louisiana to the Service Wire Company in Culloden, West Virginia. Two of the eleven loads were never delivered.

14. The incident occurred on or about May 22, 2023 – May 24, 2023.

15. On January 8, 2024, Trafigura's Recovery Agent, Reclaim Consulting Services ("Reclaim"), presented a formal Notice of Claim to Access World for the subject losses in the total amount of $373,100.21.

16. Further damages have accrued, and continue to accrue, and Plaintiff reserves the right to seek all damages incurred whether or not set forth herein.

17. The Subject Cargo was tendered to Defendant in good order and condition.

18. Defendant failed to deliver two loads of the Subject Cargo at destination, in breach of the aforementioned Motor Carrier-Broker Agreement and other contracts of carriage for the Subject Cargo.

19. As a result of Defendant's breach of the contracts of carriage, actual damages have been sustained in the amount of at least $373,100.21.

20. Plaintiff duly served, in writing, a timely notice of claim with Defendant for the subject losses and demanded payment, no part of which has been paid although duly demanded.

**FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

21. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth fully herein.

22. Defendant agreed by contract to carry the Subject Cargo from Elmwood, Louisiana to the Service Wire Company in Culloden, West Virginia, thereby obligating it to do so in a safe manner, delivering it at the destination in the same good order and condition under

3

which it was tendered at origin, and in a manner consistent with law and contracts for the carriage.

23. While the Subject Cargo was in the custody of Defendant, it was lost, in breach of Defendant's obligations in contract.

24. By virtue of written contractual agreements, purchase orders, bills of lading, confirmation paperwork, and/or by operation of conduct, the Plaintiff and Defendant were in express or implied privity of contract(s) with each other for the shipment of the Subject Cargo described herein.

25. Defendant, acting as carrier pursuant to its Agreement with Plaintiff, engaged in the business of transporting the Subject Cargo from Louisiana to West Virginia, had duties under the contractual shipping arrangements.

26. Defendant, its agents, employees or servants, thereafter violated their contractual duties.

27. Paragraph 9 of the Agreement, titled "Insurance", required Defendant to carry, at its sole expense, insurance coverages insuring Defendant's liability to pay for any loss or damage arising out of Defendant's performance of the Agreement. That provision further states that Plaintiff shall be named as an additional insured on the Automobile Liability policy and as a loss payee on the All Risk Cargo policy required to have been procured by Defendant. As such, Defendant owes Plaintiff a defense with respect to Trafigura's / Reclaim's claims.

28. Paragraph 10 of the Agreement, titled "Cargo Liability", states the following, in pertinent part: "Carrier's [Defendant's] liability for cargo loss or damage shall be no less than that of a Common Carrier as provided for in 49 U.S.C. 14706. Exclusions in Carrier's insurance coverage shall not exonerate Carrier from this liability."

29. Paragraph 11 of the Agreement, titled "Indemnification", requires Defendant to indemnify Plaintiff for losses such as the subject losses. That paragraph states:

> "Carrier [Defendant] shall defend, indemnify, and hold Broker [Plaintiff], its subsidiaries, parent companies, affiliates, employees and Customers [including Trafigura] harmless from and against all loss, liability, damage, claim, fine, cost or expense, including reasonable attorney's fees and court costs, arising out of or in any way related to the performance or breach of this Agreement by Carrier, its employees or independent contractors working for Carrier (collectively, the "Claims"), including, but not limited to, Claims arising from: personal injury (including death) or property damage; Carrier's possession, use, maintenance, custody or operation of the equipment; employment status of Carrier and any of its employees and/or independent contractors, (including claims by governmental agencies for unemployment, income or other taxes or workers' compensation. In the event that applicable state law does not allow Broker to waive liability to the extent contained in this provision, the parties expressly agree that Brokers liability will be waived to the fullest extent allowed by applicable state law. The obligations of this paragraph shall survive termination of this Agreement."

30. Accordingly, Defendant agreed to defend, indemnify, and hold Plaintiff harmless for the subject claims and losses.

31. Paragraph 12 of the Agreement states:

> "Carrier [Defendant] shall be liable to Broker [Plaintiff] and to its Customer [Trafigura] for loss, damage or delay to the commodities/cargo occurring while in the possession of or under the control of Carrier [Defendant] in accordance with the provisions of the Carmack Amendment as currently codified at 49 U.S.C. § 14706. Carrier's [Defendant's] liability for loss, damage, or delay shall be calculated in accordance with the following:
>
> a. Carrier [Defendant] shall pay to Broker [Plaintiff], or allow Broker [Plaintiff] to deduct from the amount Broker [Plaintiff] owes Carrier [Defendant], the full actual loss for the kind and quantity of Commodities/cargo so lost, delayed, damaged or destroyed. Payments by Carrier [Defendant] to Broker [Plaintiff] or its Customer [Trafigura], pursuant

    to the provisions of this section, shall be made within thirty (30) days following receipt by Carrier [Defendant] of Broker's [Plaintiff] or its Customer's [Trafigura] undisputed claim and supporting documentation. Exclusions from coverage, or limitations, contained in Carrier's [Defendant] Cargo Insurance as required herein shall not affect Carrier's [Defendant] liability for freight loss, damage, or delay."

32. Furthermore, Defendant illegally brokered the subject loads in violation of 49 U.S.C. § 13904 and in breach of the subject contracts between Access World and Beemac.

33. Paragraph 14 of the Agreement, titled "Use of Third Parties", expressly prohibits Defendant from subcontracting or otherwise tendering the loads to another common carrier. That paragraph states:

    "Carrier [Defendant] agrees that under no circumstances shall it broker or subcontract transportation of commodities/cargo or the performance of Services to any other motor contract carrier, railroad, or other transportation-related company without the consent of Broker [Plaintiff]. In the event that Carrier [Defendant] violates the provisions of this Section, Carrier [Defendant] shall be jointly and severally liable as if it moved the goods pursuant to this Agreement and agrees to indemnify Broker [Plaintiff] and its Customer(s) [including Trafigura] for all damages, expenses, losses, costs, fees, and charges of any type whatsoever, including but not limited to reasonable attorneys' fees, arising from such breach."

34. Consequently, Defendant's breach of contract was the direct and proximate cause of the chain of events resulting in the damages.

35. By reason of Defendant's breach of contractual obligations to deliver the Subject Cargo in the same good order and condition as received, damages have been sustained in the amount of at least $373,100.21, none of which has been paid although duly demanded.

36. Plaintiff has fully performed all of its obligations and conditions, and the damages suffered were caused by Defendant.

**WHEREFORE**, Plaintiff demands judgment for compensatory and consequential damages against Defendant in the amount of at least $373,100.21, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.

### SECOND CLAIM FOR RELIEF
### (CARMACK AMENDMENT - 49 U.S.C. §14706)

37. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth fully herein.

38. Plaintiff tendered the Subject Cargo to Defendant for interstate carriage by road.

39. During said carriage, the Subject Cargo suffered losses.

40. Defendant, engaged in the business of transporting the Subject Cargo, had a duty, under the Carmack Amendment, to prevent losses in transport.

41. Defendant violated the Carmack Amendment.

42. Consequently, Defendant's violations during transport were the direct and proximate cause of the chain of events resulting in the damages.

43. Defendant is strictly liable to Plaintiff for the full, actual damages as motor carrier or freight forwarder under the Carmack Amendment, 49 U.S.C. § 14706.

44. As a result of Defendant's conduct and actions, Defendant is liable for damages in the amount of at least $373,100.21, together with interest thereon from the date that the shipment was scheduled to be delivered.

**WHEREFORE**, Plaintiff demands judgment for compensatory and consequential damages against Defendant in the amount of at least $373,100.21, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.

## THIRD CLAIM FOR RELIEF
### (NEGLIGENCE)

45. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth fully herein.

46. Plaintiff tendered the Subject Cargo to Defendant for carriage and safekeeping and, upon request, for return in the same good order and condition as when received.

47. Thereafter, Defendant negligently failed to safely carry and keep the Subject Cargo, and/or failed to ensure the same, resulting in excess of $373,100.21 in damages.

48. To the extent it is determined that Defendant did not act as motor carrier or freight forwarder in transporting the shipment at issue and/or is otherwise found not to be subject to the provisions of 49 U.S.C. Section 14706, Plaintiff alleges, in the alternative, as follows:

    a. Defendant owed a duty to Plaintiff to utilize competent, qualified and fit carriers to provide transportation services and further owed Plaintiff a duty to select proper carriers and modes of transportation.

    b. Defendant breached its duties owed to Plaintiff, and the damages alleged herein were caused by and through the carelessness, negligence and recklessness of Defendant in failing and omitting to investigate and determine the competency, qualifications and fitness of the carriers and other parties with which it made arrangements for the handling and transportation of the Subject Cargo.

    c. Defendant owed a duty to Plaintiff to determine whether the carriers and other parties it selected would attempt to limit their liability in the event of loss or damage to the Subject Cargo, and to obtain additional liability coverage or insurance to protect Plaintiff's interests.

    d. Defendant breached its duties owed to Plaintiff, and the damages alleged herein were caused by and through the carelessness, negligence and recklessness of Defendant in failing and omitting to determine whether the carriers and other parties it selected had limited their liability in the event of loss or damage to the Subject Cargo and to obtain

    additional liability coverage or insurance to protect Plaintiff's interests and/or to advise Plaintiff of such limitations.

  e. Defendant owed a duty to Plaintiff to file, serve or send a claim or notice of claim with the responsible carriers or other parties in a timely manner.

  f. Defendant breached its duties owed to Plaintiff, and the damages alleged herein were caused by and through the carelessness, negligence and recklessness of Defendant in failing and omitting to file, serve or send a claim or notice of claim to the responsible carriers or other parties in a timely manner, thereby prejudicing Plaintiff's right of recovery directly against them.

49. By reason of the carelessness, negligence and recklessness of Defendant, actual damages have been sustained in the amount of at least $373,100.21, and Defendant is liable to Plaintiff for that amount.

**WHEREFORE**, Plaintiff demands judgment for compensatory and consequential damages against Defendant in the amount of at least $373,100.21, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.

### FOURTH CLAIM FOR RELIEF
### (BAILMENT)

50. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth fully herein.

51. Plaintiff tendered the Subject Cargo to Defendant for safekeeping and, upon request, for return in the same good order and condition as when received. Thus, a bailment was created.

52. The Subject Cargo was lost in Defendant's custody. Damages exceed $373,100.21.

53. Defendant breached the bailment contract by not safekeeping the Subject Cargo and by not being able to deliver it upon request to a designated location in the same good order and condition as when received.

**WHEREFORE**, Plaintiff demands judgment for compensatory and consequential damages against Defendant in the amount of at least $373,100.21, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.

### FIFTH CLAIM FOR RELIEF
### (CONVERSION)

54. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth fully herein.

55. Plaintiff tendered the Subject Cargo into the possession, custody and control of Defendant in good order and condition.

56. Defendant failed to properly deliver the Subject Cargo.

57. Carriers that fails to deliver or misdeliver cargo pursuant to contracts of carriage are liable for conversion of the cargo.

58. As a result of Defendant's conversion of the Subject Cargo, Plaintiff suffered damages in excess of $373,100.21.

**WHEREFORE**, Plaintiff demands judgment for compensatory and consequential damages against Defendant in the amount of at least $373,100.21, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.

### SIXTH CLAIM FOR RELIEF
### (DECLARATORY RELIEF)

59. Plaintiff incorporates by reference the preceding paragraphs of the Complaint as though set forth fully herein.

60. While Plaintiff denies any and all liability for the subject losses, were Trafigura and/or Reclaim to succeed in any recovery against Access World, it would be inequitable due to the want of care, breach and active culpable conduct by Defendant Beemac, over whom Access World had no control. The damages were proximately caused by Defendant Beemac in the dereliction of its duties and resulting acts and omissions, as detailed at length in the foregoing paragraphs. Consequently, Access World is entitled to legal relief against Defendant Beemac.

61. Accordingly, Plaintiff seeks declaratory judgment against Defendant Beemac, including a declaration that Defendant Beemac is required to indemnify Plaintiff for any and all damages which may be assessed against Plaintiff by Trafigura and/or Reclaim with respect to the Subject Cargo.

**WHEREFORE**, Plaintiff demands judgment for compensatory and consequential damages against Defendant in the amount of at least $373,100.21, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.

Dated:     April 30, 2024
           Pittsburgh, PA

                        MARSHALL DENNEHEY, P.C.

By:   */s/ Darren M. Newberry*
      Darren N. Newberry, Esq.
      Union Trust Building, Suite 700
      501 Grant Street
      Pittsburgh, PA 15219
      Tel: (412) 803-1183
      Fax: (412) 803-1188
      Email: DMNewberry@mdwcg.com

      *Attorneys for Plaintiff, Access World (USA) LLC*