IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ACCESS WORLD (USA) LLC,

        Plaintiff,

    v.

BEEMAC, INC.,

        Defendant/Third-Party Plaintiff,

    v.

MAGIC FREIGHT INC.,

        Third-Party Defendant.

Civil Action No.:  2:24-cv-00643

<u>Jury Trial Demanded</u>

## THIRD-PARTY COMPLAINT

AND NOW comes Defendant/Third-Party Plaintiff Beemac, Inc., by and through its counsel, Pietragallo Gordon Alfano Bosick & Raspanti, and files the following Third-Party Complaint against Magic Freight Inc., averring as follows:

## BACKGROUND

1.　　Access World (USA) LLC ("Access World" or "Plaintiff") commenced this action against Beemac, Inc. on April 30, 2024. *See* Doc. 1 (Original Complaint).

2.　　On June 19, 2024, Beemac, Inc. ("Beemac, Inc." or "Third-Party Plaintiff"), filed its Answer and Affirmative Defenses. *See* Doc. 10.

3.　　Third-Party Defendant, Magic Freight Inc. ("Magic" or "Third-Party Defendant"), at all relevant times, engaged in the business of transporting cargo. It is an Indiana business corporation with a registered office located at 9219 Indianapolis Boulevard, MB105, Highland, Indiana, 46322.

4.      Magic is engaged in the business of transporting cargo as a motor carrier engaged in interstate commerce.

## JURISDICTION AND VENUE

5.      This action arises from cargo losses that were sustained by a shipper, estimated to have occurred at sometime between May 22, 2023, and May 24, 2023.  The losses are the subject of this action. *See generally* Docs. 1 & 10.

6.      This action arises from an interstate motor transportation of goods and is governed by federal law, including the Carmack Amendment to the Interstate Commerce Act of 1887 (49 U.S.C. §14706). Subject matter jurisdiction is therefore proper under 28 U.S.C. §1331.

7.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because the action is between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8.      This Court also has supplemental jurisdiction over the state law claims asserted against the Third-Party Defendant pursuant to 48 U.S.C. §1367, as the state law claims are so related to the Federal Claims under 49 U.S.C. §14706 that they form part of the same controversy under Article III of the United States Constitution.

9.      This Court may exercise personal jurisdiction over the Third-Party Defendant because it engages in continuous and systematic business within Pennsylvania.

10.      Venue is proper in this District because venue is proper in the original action and that proper venue extends to this Third-Party claim against the Third-Party Defendant.

## NATURE OF THE ACTION

11.      This action arises from interstate motor transportation of cargo said to have consisted of copper wire rods ("subject cargo").

12.	Access World retained Beemac Logistics, LLC to transport eleven loads of Trafigura copper, the subject cargo from the Port Cargo Service.

13.	The incident involving the loss of copper load transported by Magic's employee occurred on May 22, 2023.

14.	Magic responded to a posting by Beemac Logistics, that it would transport a load of copper from 6040 Beven Street, Elmwood, Louisiana to Service Wire Company in Culloden, West Virginia on May 22, 2023.

15.	Upon arrival of its driver, Suzana Gligoric, Magic's driver executed the Bill of Lading and confirmed her identity through the presentation of her Driver's License. A copy of the Bill of Lading and the Driver's License are attached collectively as Exhibit 1.

16.	The destination for the delivery of the load secured by Magic's driver, Suzana Gligoric, per the Bill of Lading, has been confirmed to be Service Wire Company, 300 Davis Road, Culloden, West Virginia 25510.

17.	For reasons not established to-date, Magic's driver, operating as an employee, agent and/or representatives of the Third-Party Defendant, diverted the loads to Oxford, California.

18.	Access World has averred that the load that was to be transported by Suzana Gligoric has never been retrieved and that Access World has sustained damages in the amount of at least $186,550.10.

19.	Third-Party Defendant Magic had entered into written contractual agreements with Beemac Logistics, LLC to provide motor carrier services. A copy of the Motor Carrier-Broker Agreement executed by Magic and a representative from Beemac Logistics, LLC is attached as Exhibit 2.

20.     Access World asserts that the subject cargo was tendered to Third-Party Plaintiff in good order and condition.  Accordingly, Third-Party Plaintiff asserts that the subject cargo was provided to the Third-Party Defendant by the shipper in good order and condition.

21.     The Third-Party Defendant failed to deliver the subject cargo to destination, in breach of the Bill of Lading issued by the shipper to the Third-Party Defendant driver and in violation of the Motor Carrier-Broker Agreements in force between Beemac Logistics and the Third-Party Defendant.

22.     As a result of the Third-Party Defendant's breach of the contract of carriage, associated with loss of cargo under the control of Magic, Access World has filed a claim of at least $186,550.10 against the Third-Party Plaintiff.

## FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT

23.     The Third-Party Plaintiff incorporates by reference the preceding paragraphs as though more fully set forth herein.

24.     The Third-Party Defendant agreed by contract to carry the subject cargo from Elmwood, Louisiana to the Service Wire Company in Culloden, West Virginia, thereby obligating them to do so in a safe manner, delivering the cargo to destination in the same good order and condition under which it was tendered at origin, and in a manner consistent with law and contracts for the carriage.

25.     The subject cargo was lost while in the custody of the Third-Party Defendant, in breach of its obligations.

26.     In addition to the duties imposed by federal law, the Third-Party Defendant, acting as a carrier pursuant to the Agreement entered into with Beemac Logistics, LLC, agreed to

transport Trafigura's cargo from Elmwood, Louisiana to the Service Wire Company in Culloden, West Virginia, which, contractually, imposed duties upon the Third-Party Defendant.

27.     The Third-Party Defendant, its agent, employee and/or servant violated its contractual duties in addition to other legal duties by failing to deliver the shipper's loads to the site prescribed by the shipper's Bill of Lading.

28.     Cargo lost during transport by Magic was brokered to Beemac Logistics, LLC by Access World.

29.     On April 23, 2019, Beemac Logistics entered into a Broker/Carrier Agreement wherein Magic agreed to serve as a motor carrier.  *See* Exhibit 2.

30.     The Broker/Carrier Agreement set forth above included the following terms, among others:

    a.   Carrier retains the sole and exclusive control over the shipment from the date and time of pickup until the delivery by carrier to destination;

    b.   The carrier shall assume liability under the Carmack Amendment as set forth in 49 U.S.C. §14706 for any loss, damage or delay without any limitation of liability;

    c.   Agreed to insure, at the carrier's cost, property damage, commercial liability and All Risk Broad Form Motor Truck Cargo Liability insurance without exclusions of any type relating to all cargo claims;

    d.   Agreed to indemnify and defend the Broker for any losses sustained by Broker's customers for failure to perform under the Broker/Carrier Agreements.

31.     Consequently, the Third-Party Defendant's breach of contract was the direct and proximate cause of the chain of events resulting in the alleged damages to Access World.

32.     By reason of the Third-Party Defendant's federal statutory, regulatory, common law and contractual agreements, any damages sustained by Access World (asserted as at least $186,550.10) is the obligation of the Third-Party Defendant.

33.     To the extent that Third-Party Plaintiff has any provable liability for some or all of the damages claimed, Third-Party Plaintiff asserts that it had performed all of its obligations, in response thereto.

WHEREFORE, the Third-Party Plaintiff demands judgment for compensatory and consequential damages against the Third-Party Defendant which has been incurred by the Plaintiff as a result of the loss of cargo which is the subject matter of these proceedings and demands that the Third-Party Defendant defend the Third-Party Plaintiff and reimburse the Third-Party Plaintiff with Court costs, attorneys' fees, interest and all other relief permitted by the Court.

## SECOND CLAIM FOR RELIEF: CARMACK AMENDEMENT - 49 U.S.C. §14706

34.     The Third-Party Plaintiff incorporates by reference the preceding paragraphs as though more fully set forth herein.

35.     Whether the subject cargo was brokered by the Third-Party Plaintiff or a third party, Beemac Logistics, LLC, the acceptance of the loads by the Third-Party Defendant and the alleged loss while under the control of the Third-Party Defendant constitutes a violation of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §11706.

36.     Consequently, Third-Party Defendant's failure to transport was the direct and proximate cause of the chain of events resulting in a portion of the alleged damages asserted by the Plaintiff in these proceedings.

37.     The Third-Party Defendant is strictly liable for the full, actual damages as a motor carrier or freight forwarder under the Carmack Amendment, 49 U.S.C. §14706.

38.     As a result of Third-Party Defendant's conduct and actions, through its employee, agent and/or representative, the Third-Party Defendant is liable to the Plaintiff for damages alleged by the Plaintiff to be an amount of at least $186,550.10, together with interest thereon from the date that the shipment was scheduled to be delivered per the instructions issued by the shipper and as set forth in the Bill of Lading acknowledged by the Third Party Defendant, its agent, employee and/or servant.

WHEREFORE, Third-Party Plaintiff demands judgment for compensatory and consequential damages against the Third-Party Defendant in the amount of at least $186,550.10, together with Court costs, attorneys' fees, interest and all other relief permitted by the Court.

### THIRD CLAIM FOR RELIEF: NEGLIGENCE

39.     The Third-Party Plaintiff incorporates the preceding paragraphs as though more fully set forth herein.

40.     The subject cargo was tendered to the Third-Party Defendant for carriage and safekeeping and, upon request, for return of the same in good order and condition as when received.

41.     Thereafter, the Third-Party Defendant negligently failed to safely transport and keep the subject cargo and/or failed to insure the same, resulting in alleged damages in excess of $186,550.10.

42.     The Third-Party Defendant:

    a.  Owed a duty to Beemac, Inc. or, in the alternative, a third party, Beemac Logistics, LLC, to utilize competent drivers who were knowledgeable with regard to Federal Law and Regulations and the significance of directives set forth in Bills of Lading;

b. Breached its duties in failing to recognize that imposters, through illicit means were inducing their employees, agents and/or servants, to deviate from the prescribed instructions set forth in the Bills of Lading prepared by the shipper;

c. Failed to secure coverage that would address the losses that were alleged to have been incurred by the Plaintiff.

43.     By reason of the carelessness and negligence of Third-Party Defendant, Magic, Plaintiff has purportedly sustained damages in the amount of at least $186,550.10 for which the Third-Party Defendant is liable to Plaintiff.

WHEREFORE, Third-Party Plaintiff demands judgment for compensatory and consequential damages against the Third-Party Defendants in the amount of at least $186,550.10, together with Court costs, attorneys' fees, interest and all other relief permitted by the Court.

## FOURTH CLAIM FOR RELIEF: BAILMENT

44.     The Third-Party Plaintiff incorporates by reference the preceding paragraphs as though more fully set forth herein.

45.     The subject cargo was tendered to the Third-Party Plaintiff for safekeeping and, upon request of the Plaintiff, for return in the same good order and condition as when received. Thus, a bailment was created.

46.     The subject cargo was lost in the Third-Party Defendant's custody.  Thus, any damages incurred by the Plaintiff are in part payable by the Third-Party Defendant to the Plaintiff and in an amount purported to be at least $186,550.10.

47.     The Third-Party Defendant breached the bailment obligations by not safekeeping the subject cargo and by not being able to deliver it upon request to a designated location in the same good order and condition as when received.

WHEREFORE, Third-Party Plaintiff demands judgment for compensatory and consequential damages against the Third-Party Defendant in the amount of at least $186,550.10, together with Court costs, attorneys' fees, interest and all other relief permitted by the Court.

## FIFTH CLAIM FOR RELIEF: CONVERSION

48.     The Third-Party Plaintiff incorporates by reference the preceding paragraphs as though more fully set forth herein.

49.     The Third-Party Defendant accepted possession, custody and control of the subject cargo in good order and condition.

50.     The Third-Party Defendant failed to properly deliver the subject cargo.

51.     The carrier that fails to deliver or misdeliver cargo pursuant to contracts of carriers is liable for the conversion of that cargo.

52.     As a result of the Third-Party Defendant's conversion of the subject cargo, the Third-Party Defendant is liable to Plaintiff for a portion of the Plaintiff's damages; said portion is alleged to be in excess of $186,550.10 for which the Third-Party Defendant remains responsible.

WHEREFORE, Third-Party Plaintiff demands judgment for compensatory and consequential damages against the Third-Party Defendant in the amount of at least $186,550.10, together with Court costs, attorneys' fees, interest and all other relief permitted by the Court.

## SIXTH CLAIM FOR RELIEF: INDEMNITY AND CONTRIBUTION

60.     The Third-Party Plaintiff incorporates by reference the preceding paragraphs as though more fully set forth herein.

61.     The Third-Party Defendant is legally obligated to defend and indemnify the Third-Party Plaintiff for any claim asserted by Access World independently or on behalf of the shipper, Trafigura.

62.     Should there be a determination that the Third-Party Plaintiff is liable to Access World, an assertion that has been denied, the Third-Party Plaintiff seeks indemnity and/or contribution from the Third-Party Defendant under Statute and Common Law and for the reasons set forth in this Third-Party Complaint.

WHEREFORE, Third-Party Plaintiff demands judgment for compensatory and consequential damages against the Third-Party Defendant in the amount of at least $186,550.10, together with Court costs, attorneys' fees, interest and all other relief permitted by the Court.


Date:   September 27, 2024                    Respectfully submitted,

                                              PIETRAGALLO GORDON ALFANO
                                              BOSICK & RASPANTI, LLP


                                              s/ Mark Gordon
                                              Mark Gordon
                                              PA Id.: 25561
                                              412-263-1838
                                              mg@pietragallo.com

                                              Matthew R. Barnes
                                              PA Id.: 328771
                                              412-263-1842
                                              mrb@pietragallo.com

                                              One Oxford Centre, 38th Floor
                                              Pittsburgh, PA 15219

                                              *Counsel for Defendant/Third-Party Plaintiff,*
                                              *Beemac, Inc.*

# EXHIBIT 1



**ACCESS WORLD**

| Account of: | Shipper: |
|---|---|
| TRAFIGURA TRADING LLC (COPPER) | TRAFIGURA TRADING LLC (COPPER) |
| 5 HOUSTON CENTER | 5 HOUSTON CENTER |
| 1401 MCKINNEY, SUITE 1500 | 1401 MCKINNEY, SUITE 1500 |
| HOUSTON, TX 77010 USA | HOUSTON, TX 77010 USA |

| Ship to: | REF # |
|---|---|
| SERVICE WIRE COMPANY | |
| 300 DAVIS ROAD | 050-002678-04 |
| CULLODEN, WV 25510 | P.685573.10 / S.686315.2 |
| USA | VR21524 |
| | PO 81466 |

| B/L No. | WAREHOUSE | SHIP VIA | OUR REF |
|---|---|---|---|
| 10 | 6040 BEVEN ST | ACCESS WORLD | 050-002678-04 |

| LOT REF | QTY | DESCRIPTION | GROSS WEIGHT | NET WEIGHT | WARRANT |
|---|---|---|---|---|---|
| 050-002008-24 | 2 | ALMALYK | 6248 | 6200 | |
| 050-002008-25 | 2 | | 6250 | 6200 | |
| 050-002008-26 | 2 | COPPER WIRE RODS | 6251 | 6200 | |
| | | | | | |
| | | | | | |

| BUNDLES | 6 |
|---|---|
| GROSS KG WT | 18749 |
| NET KG WT | 18600 |
| GROSS LBS WT | 41334 |
| NET LBS WT | 41006 |

| TRUCK# | 24 |
|---|---|
| TRAILER# | 415274 |
| SEAL # | 122636 |

DRIVER SIGNATURE X

CDL Lic # (G) 426-780-85-757-0

DATE 5-22-23

By Signing this Bill of Lading, the driver accepts the following Responsibilities:

1. Material and weight loaded as per driver's instructions.

2. Blocking, bracing and securing of cargo is arranged by the truck driver.
   We will not accept any responsibility for blocking and bracing or cargo shifting during transit.

3. Driver requested materials for blocking and bracing (if requested, have driver initial) X

4. Driver acknowledges that the load was blocked and braced by warehouse ( have driver sign )        X

Access World (USA) LLC · 520 Elmwood Park Blvd · Suite 135· Elmwood, LA 70123 P+1 504-733-9999
· info@accessworld.com · www.accessworld.com

Access World (USA) LLC
Scheduled Truck Appointments

Release Reference No: P.686573.10 / S.686315.2 / VR21439 / PO81467

Warehouse: 6040 BEVEN
JEFFERSON, LA

Whse. E-mail: gerd@portcargo.com
peter@portcargo.com
errol@portcargo.com
traffic.nola@accessworld.com

New Orleans, US

Truck Carrier / Broker: Access World

| Pick Up Date | Pick Up Number | Appointment Time | Customer | Load Destination | To Be Completed By Customer / Truck Broker / Carrier | | | | Office Use Only | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Carrier | Driver Name (printed) | Driver License Number | Trk/Trl # | CHECK IN | CHECK OUT |
| 22-May-23 | 050-002678-04 | 7:30 am - 12 pm 12:30 pm - 3 pm | Trafigura | Culloden, WV | MAGIC FREIGHT | Suzi Gligorijevic | G426-780-85-757-0 | Truck:24 / Trailer: 415274 | 11:45 | |
| 23-May-23 | 050-002678-04 | 7:30 am - 12 pm 12:30 pm - 3 pm | Trafigura | Culloden, WV | | | | Truck: / Trailer: | | |
| 23-May-23 | 050-002678-04 | 7:30 am - 12 pm 12:30 pm - 3 pm | Trafigura | Culloden, WV | | | | Truck: / Trailer: | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Note:

Truck and driver information is required to be faxed directly by the customer/carrier/truck broker to the warehouse by the open of business same day as shipment is scheduled. Due to the level of activity, faxes and e-mails sent to the office will not be forwarded to the warehouse(s). If this information is not provided by any party as required, we cannot commit to fulfilling all scheduled loads per relevant warehouse and will not be responsible for delays of subsequent changes.



# EXHIBIT 2



**Carrier Contract**

THIS AGREEMENT is made this day **04/23/2021**, between BEEMAC LOGISTICS, LLC

("BEEMAC"), having its principal place of business at 2747 Legionville Road, Ambridge, PA 15003, and

**MAGIC FREIGHT INC** ("CARRIER") having its principal place of business

at **9219 INDIANAPOLIS BLVD STE MB105, HIGHLAND, IN 46322**

### I. RECITALS

1.      BEEMAC is engaged in the business of providing third party logistics services, including services as a property broker pursuant to a license issued by the Federal Motor Carrier Safety Administration (FMCSA) at MC-331705.

2.      CARRIER is engaged in the business of transporting general commodities and desires to render transportation services BEEMAC arranges, between points and places in the United States.

3.      BEEMAC desires to engage the services of CARRIER subject to the terms and conditions set forth in this Agreement.

### II. TERMS AND CONDITIONS

The parties hereto, intending to be legally bound hereby, agree, represent and warrant as follows:

1. **Scope and Duration of Contract**. This Agreement supersedes, and takes the place of any prior agreement between the parties hereto and shall remain in full force and effect for a period of one (1) year from the date hereof and shall be renewed automatically from year to year thereafter under the same terms and conditions, except as the parties may otherwise agree. This Agreement may be canceled by either party at any time during the initial or any subsequent term, by giving at least fifteen (15) days written notice of such termination. Notwithstanding the foregoing, BEEMAC may terminate this Agreement on one day's written notice to CARRIER if CARRIER files a voluntary petition in bankruptcy, makes an assignment for benefit of credits, is voluntarily or involuntarily adjudicated a bankrupt, has a receiver appointed for its business, becomes insolvent, or commits a material breach of any term or condition of this Agreement.

2.      **Shipping Documents**

A. Bill of Lading. Each shipment hereunder shall be evidenced by a Uniform Standard Bill of Lading naming CARRIER as the transportation company. The bill of lading may show the name of BEEMAC, but only as the transportation broker and not as the carrier. The terms and conditions of the bill of lading shall apply except where such terms vary from the terms of this Agreement and, in such case, the terms of this Agreement shall be controlling. CARRIER's failure to issue a bill of lading shall not affect its liability hereunder. CARRIER shall notify BEEMAC immediately of any exception made on the bill of lading or delivery receipt.

*Ambridge, PA*

*Carrier Setup Packet*

*Ph: 724-891-1612*



' B. Delivery Receipt. Upon delivery of each shipment, CARRIER shall obtain a delivery receipt showing the kind and quantity of product delivered to the consignee, and which CARRIER shall cause to be signed by a representative, agent or employee of the consignee. CARRIER shall notify BEEMAC immediately of any exceptions made on the delivery receipt by the consignee, including any notations of loss or damage.

**3.      Service, Rates and Payment**

A. Services. CARRIER agrees to provide transportation service for each shipment offered to CARRIER by BEEMAC and accepted by CARRIER. BEEMAC and CARRIER agree that this Agreement shall govern the rights, duties and liabilities of CARRIER and BEEMAC as more fully stated herein. Regardless of whether they are required by law, in no event shall any provisions of CARRIER's tariff, terms and conditions, service guide, bill of lading, or similar documentation apply to services provided under this Agreement. CARRIER shall transport all shipments provided under this Agreement without delay, and all occurrences which would be probable or certain to cause delay shall be immediately communicated to BEEMAC by CARRIER. This Agreement does not grant CARRIER an exclusive right to perform any transportation related services for BEEMAC or its Customer.

B. Payment/Rates. BEEMAC will pay CARRIER in accordance with the rats and charges agreed to by the parties as set forth on BEEMAC's load confirmation sheet, or any other written document, which a representative of CARRIER shall sign. CARRIER will submit its invoice to BEEMAC, together with proof of delivery as provided herein, within five (5) days of delivery of a shipment. BEEMAC shall pay CARRIER for the transportation service provided by CARRIER within thirty (27) days of receipt by BEEMAC from CARRIER of its invoice and the signed delivery receipt. CARRIER understands, acknowledges and agrees that BEEMAC has the sole and exclusive right to bill all customers for transportation charges negotiated between BEEMAC and its customers and that CARRIER will be paid only in accordance with the rates specified on the load sheet. CARRIER further agrees not to invoice, collect, or attempt to collect, freight charges from any consignor or consignee for which transportation service is provided by CARRIER pursuant to this Agreement. CARRIER further agrees that in the event that any payment for transportation services performed under this Agreement is made to the CARRIER by the shipper or consignee, that CARRIER will immediately refund the full amount received to BEEMAC and that failure to do so would represent a material breach of this Agreement by CARRIER.

**4.      Regulatory Approvals**. CARRIER warrants and represents that it is a licensed motor carrier and holds operating licenses as follows:

FMCSA Certificate No. MC-**1158615**                     .

CARRIER warrants that it holds any and all necessary licenses and permits and any other required approvals from the US Department of Transportation (DOT) and any other federal, state, local or provincial government to perform the transportation services covered by this Agreement and any Addendums or Appendices thereto. In addition, CARRIER warrants that its operations, vehicles, drivers and other personnel are now and will remain qualified and in compliance with all rules, regulations, orders, or requirements of the FMCSA and DOT. In the event that CARRIER receives an unsatisfactory safety rating, is notified that it may receive an unsatisfactory safety, fails to maintain insurance required hereunder, is notified that such insurance may become ineffective or is otherwise prohibited by applicable law from performing services



hereunder, CARRIER shall immediately notify BEEMAC of such fact and shall not carry any loads or goods tendered to CARRIER by BEEMAC until such prohibition on operations is removed.

**5.** **Freight Loss, Damage or Delay**

A. CARRIER shall have the sole and exclusive control of the shipment of BEEMAC's customer from the time it is picked up by CARRIER for transportation until delivery by CARRIER to the consignee. CARRIER assumes the liability of a motor common carrier as defined in 49 C.§ 11706 (Carmack Amendment liability) for any loss, damage or delay. Any claim filed by BEEMAC on behalf of its customer against CARRIER for loss, damage or delay will be subject to the regulations set forth in 49 C.F.R. Part 370. In the event CARRIER is obligated to pay BEEMAC or its customer for any claim against CARRIER or which results in a judgment against CARRIER rendered by a court of competent jurisdiction and which CARRIE fails to pay, BEEMAC may withhold from any amount due from BEEMAC to CARRIER the amount of such claim. If BEEMAC is required to enter suit against the CARRIER to recover for loss, damage or delay and BEEMAC obtains a judgment against the CARRIER, the CARRIER agrees to pay BEEMAC's reasonable attorney's fees.

B. No other limitation of liability shall apply unless specifically agreed to in writing by BEEMAC prior to CARRIER's receipt of the specific shipments to which such limitation applies, and BEEMAC's agreement to a limitation shall not be construed as a waiver of full value liability with respect to any other goods tendered to CARRIER.

C. CARRIER waives any right to salvage goods subject to this provision, as well as any right to claim an offset for the value of salvage

D. Exclusions from coverage contained in CARRIER's Cargo Insurance as required herein shall not affect CARRIER's liability for freight loss, damage, or delay.

**6.** **Insurance**. CARRIER shall maintain, at its expense, insurance as follows:

A. Public liability and property damage insurance ("AL") covering all owned, non- owned, and hired vehicles (including any Trailers provided by BEEMAC or its Customer as addressed below) with a reputable and financially responsible insurance company insuring CARRIER in an amount not less than $1,000,000.00 (U.S. Dollars) per occurrence, or such larger amount as required by applicable law.

B. Commercial General Liability ("CGL") Insurance covering the transportation of shipments and other operations under this Agreement in an amount not less than $1,000,000.00 (U.S. Dollars) per occurrence. Such insurance shall also cover CARRIER's contractual liability under this Agreement.

C. All Risk Broad Form Motor Truck Cargo Legal Liability ("Cargo") insurance in an amount not less than $100,000.00 (U.S. Dollars) per occurrence. The coverage provided under the policy shall have no exclusions or restrictions of any type that would foreseeably preclude coverage relating to cargo claims including, but not limited to, exclusions



for unattended or unattached trailers, theft, commodities transported under this Agreement, refrigerator breakdown or lack of refrigerator fuel.

D. Statutory Workers' Compensation Insurance coverage in such amounts and in such form as required by applicable state law.

E. All insurance policies required by this Agreement shall, as applicable, be primary and shall waive subrogation and contribution against BEEMAC. CARRIER shall furnish to BEEMAC written certificates obtained from the insurance carrier showing that such insurance has been procured, is being properly maintained, the expiration date, and specifying that written notice of cancellation or modification of the policies shall be given to BEEMAC at least thirty (30) days prior to such cancellation or modification. In addition, BEEMAC shall be named as an additional insured on CARRIER's CGL and AL policies, and as a loss payee on the Cargo policy as evidenced by an endorsement on the certificates of insurance. Upon request of BEEMAC or its designated insurance consultant, CARRIER shall provide BEEMAC, BEEMAC's consultant, or Customer with copies of the applicable insurance policies.

7.      **CARRIER Status**. CARRIER is an independent contractor and nothing in this Agreement shall constitute CARRIER and BEEMAC, or the shippers represented by BEEMAC, as partners, joint ventures, or otherwise associated in or with the business of the other. All persons through whom CARRIER performs services under this Agreement shall be the employees, agents or subcontractors of the CARRIER and not of BEEMAC. CARRIER assumes sole responsibility for compliance with all economic, operational, safety and any other requirements imposed by federal, state or other regulatory bodies relating to the services of CARRIER. CARRIER agrees to reimburse BEEMAC for any costs or expenses incurred by BEEMAC, including, but not limited to, the amount of fines or penalties, or costs of counsel relating thereto, arising from any assertion or finding of lack of compliance with the aforesaid laws and/or regulations applicable to the operations of CARRIER.

8.      **Indemnification by CARRIER**. CARRIER agrees to defend, indemnify, save and hold harmless BEEMAC and BEEMAC's customers from and against any and all manner of penalties, fines, assessments, claims, losses, damages or judgments arising from operation of the CARRIER's vehicles or CARRIER's performance or failure to perform under this Agreement. In addition, CARRIER agrees to indemnify, save and hold harmless and defend BEEMAC and BEEMAC's customers and BEEMAC's officers, directors or employees, from and against any and all claims for loss, damage or injury, suits, actions, cause of action, legal proceedings, or other liabilities of any kind or nature brought against BEEMAC and/or BEEMAC's customers and/or BEEMAC's officers, directors or employees, arising from or in connection with loss or damage to property or injury or death to persons, including, but not limited to, employees of BEEMAC, BEEMAC's customers or CARRIER, occurring during or related to the course of CARRIER's performance of services under this Agreement.

9.      **Force Majeure**. CARRIER's failure to perform its obligations hereunder shall be excused when caused by Acts of God, floods, fires, storms, strikes, lockouts, riots, insurrections, prohibitions, or other instances beyond CARRIER's control. CARRIER shall provide prompt written notice to BEEMAC and each affected consignee of any such event. CARRIER shall use reasonable efforts to remove or avoid the condition as soon as possible.

**10.Confidentiality and Non-Solicitation**. CARRIER agrees to hold confidential and to not disclose to any third party without BEEMAC's prior written consent, and then to not use such information for its own purposes beyond the services to be provided under this Agreement, any information regarding BEEMAC's customers, the business of its customers, rate schedules, shipping patterns, or any term or condition of this Agreement. BEEMAC agrees to keep CARRIER's rates confidential. The obligations of BEEMAC and CARRIER hereunder shall survive any termination or expiration of this Agreement. In addition, CARRIER agrees that it will not solicit traffic from any shipper, consignor, consignee or customer of BEEMAC where CARRIER had not previously provided transportation for such shipper, consignor, consignee or customer of BEEMAC before providing such service pursuant to this Agreement with BEEMAC. If CARRIER directly or indirectly solicits traffic from such customers of BEEMAC and obtains traffic from such customers during the term of this Agreement, or for a period of twelve (12) months after the termination of this Agreement, for whatever reason, CARRIER shall be obligated to pay BEEMAC for a period of twelve (12) months thereafter, an amount equal to fifteen (15%) percent of the transportation revenue received by CARRIER for such transportation. CARRIER agrees that it shall provide BEEMAC, upon request, with all documentation requested by BEEMAC pertaining to such transportation performed by CARRIER.

**11.** **Waiver of Carrier's Lien**. CARRIER shall not withhold any goods transported under this Agreement on account of any dispute as to rates or any alleged failure of BEEMAC to pay charges incurred under this Agreement. CARRIER is relying upon the general credit of BEEMAC and hereby waives and releases all liens which CARRIER might otherwise have to any goods of BEEMAC or its Customer in the possession or control of CARRIER.

**12.** **Sub-Contract Prohibition**. CARRIER specifically agrees that all freight tendered to it by BEEMAC shall be transported on equipment operated only under the authority of CARRIER, and that CARRIER shall not in any manner sub-contract, BEEMAC, or in any other form arrange for the freight to be transported by a third party without the prior written consent of BEEMAC. In the event that CARRIER breaches this provision, CARRIER shall remain directly liable to BEEMAC as if CARRIER transported such freight under its own authority in accordance with this provision, and shall further hold harmless and indemnify BEEMAC from any and all loss, liability, damage, claim, fine, cost or expense, including reasonable attorney's fees, arising out of or in any way related to the use of any subcontractor in violation of this provision regardless of whether arising from the conduct or omissions of CARRIER, the subcontractor, or any other third party. If CARRIER in any manner sub-contracts, brokers, or otherwise arranges for freight to be transported by a third party, in addition to any other rights and remedies available to BEEMAC, BEEMAC may, in its sole discretion, pay the underlying carrier directly, which payment will relieve BEEMAC of any and all payment obligations to CARRIER with respect to such load

**13.** **BEEMAC's Records**. To the extent allowable under Applicable Law, CARRIER hereby waives its right to obtain copies of BEEMAC's records as provided for under 49 C.F.R. Part 371. Notwithstanding the foregoing, to the extent that CARRIER obtains records set forth in 49 C.F.R. § 371.3 by any means whatsoever, CARRIER agrees to refrain from utilizing such records in negotiating for the provision        of        services        with        any        third        party,        including

existing customers of BEEMAC. CARRIER further agrees and understands that all such records comprise BEEMAC's confidential information and trade-secrets. Nothing in this section is intended to relieve CARRIER of any other obligations imposed upon it by this Agreement, or to limit any rights of BEEMAC to enforce such obligations.

**14.    Entire Agreement**. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be changed, waived or modified except by written agreement signed by both parties hereto specifically stating that such writing is an amendment to this Agreement. If any part, term or provision of this Agreement is declared unlawful or unenforceable by judicial determination or otherwise, the remainder of this Agreement shall remain in full force and effect.

**15.    Waivers**. CARRIER expressly waives any and all rights and remedies allowed under 49 C.§ 14101 TO THE EXTENT THAT SUCH RIGHTS AND REMEDIES CONFLICT WITH THIS Agreement.    Failure of BEEMAC to insist upon any specific performance required by CARRIER under this Agreement or to exercise any right or privilege shall not be a waiver of any of BEEMAC's rights hereunder. CARRIER further agrees to not hold shipments of the customers on account of any dispute as to rates or any alleged failure of BEEMAC to pay charges incurred under this Agreement. CARRIER is relying upon the general credit of BEEMAC and hereby waives and releases all liens which CARRIER may otherwise have to any goods of BEEMAC's customers in the possession or control of CARRIER.

**16.    Notices**. All notices or other communications required in writing may be faxed to the respective parties below and shall be followed by a copy with original signatures sent certified mail, postage prepaid, and addressed as follows:

| BEEMAC LOGISTICS, LLC | CARRIER: |
|---|---|
| 2747 Legionville Road | Name: **MAGIC FREIGHT INC** |
| Ambridge, PA  15003 | Address: **9219 INDIANAPOLIS BLVD STE MB105, HIGHLAND, IN 46322** |
| Fax No. 724-359-0108 | Fax No. |

Unless otherwise specified herein, a notice given under this Agreement shall be effective when first receive, either by fax or by mail

**17.    Interpretation, Law Applicable**. This Agreement shall be construed and enforced under the laws of the Commonwealth of Pennsylvania, unless otherwise specifically provided herein, and it is mutually agreed that either BEEMAC or CARRIER may exercise any right or remedy hereunder in the Commonwealth of Pennsylvania or in the United States District Court for the Western District of Pennsylvania.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties hereto have executed this Agreement on the date and year first written above.

BEEMAC LOGISTICS, LLC                    CARRIER

_Loren Dworakowski_ (signature)

                                         **Vladimir Krstic**
                                         Signature

Loren Dworakowski                        **Vladimir Krstic**

Printed Name                             Printed Name

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Third-Party Complaint was served on all counsel through the Court's CM/ECF system, which will send notification of such filing to all counsel of record. I further certify that the foregoing Third-Party Complaint will be served upon Third-Party Defendant pursuant to the Federal Rules of Civil Procedure.


*s/ Mark Gordon*

Mark Gordon